**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAULINA MALLARI DEOCERA, | |
| Plaintiff, | Case No.: 3:18-cv-14465-BRM-DEA |
| v. | |
| ANTHEM BLUE CROSS BLUE SHIELD, | **OPINION** |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Anthem Blue Cross Blue Shield's ("Anthem") unopposed motion to dismiss. (ECF No. 6.) Having reviewed the filings submitted in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause appearing, Defendants' motion to dismiss is **GRANTED**.

### I. BACKGROUND

For the purposes of the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

On August 28, 2018, Plaintiff filed a complaint against Anthem with the Superior Court of New Jersey. (*Id.* at 6.) Anthem filed a Notice of Removal of its action from the Superior Court of New Jersey, Special Civil part, Middlesex County, to the United States District Court for the

District of New Jersey on September 28, 2018 (ECF No. 1-2 at 2) on the basis of federal question jurisdiction. (ECF No 1-3.)

Plaintiff attaches a one-page statement to her form Complaint setting forth a summary of her allegations. (Compl. (ECF No. 1-1) at 5.) It states, in its entirety:

> This is in connection with the denial of my required breast reduction surgery. I had my surgery last November 23, 2016.
>
> My surgery has been established as a medical necessity and with the scope of the medical coverage provided. The issue now is the out of network provider, Dr. Matthew Lynch.
>
> Blue Cross Blue Shield have provided me a lists of the physicians (attached) as in network. I have contacted physicians provided. Each of these physicians confirmed they do not perform the reduction surgery as I required. I had this medical issue (multiple breast aspirations and biopsy) since when I was 30 years old. I can't tolerate the pain anymore.
>
> Also, None of this qualified physician who can perform the surgery within Middlesex County of New Jersey or in the alternative approve Dr. Lynch for this procedure.
>
> Please help and have the Superior Court of New Jersey to review my request for my surgery and approve it with Dr. Lynch, and have Blue Cross Blue Shield pay for my expenses.
>
> Thank you in advance. I appreciate it.

(*Id.* at 5.) In addition to the complaint, Plaintiff includes a series of documents that appear to make up her diagnostic history. Because the surgery performed by Dr. Lynch is "integral to" Plaintiff's complaint, and for the benefit of the Court and the *pro se* Plaintiff in providing some context to Plaintiff's allegations, the Court will consider the documents relating to that surgery. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

On September 12, 2016, Plaintiff requested "2 units" of breast reduction from her insurance carrier, Anthem, but Anthem refused to provide insurance coverage for the surgeries because Plaintiff requested surgery from an out-of-network physician. (ECF No. 1-1 at 12.) In her complaint, Plaintiff argues that no in-network surgeons were willing to perform her "required

breast reduction surgery." (ECF No. 1-1 at 6.) However, Dr. Lynch was willing to perform the surgery for Plaintiff. (*Id.*) Notably, Dr. Lynch is not listed as an in-network provider on Plaintiff's benefit plan. (*See id.* at 8-10.)

Nonetheless, Dr. Lynch wrote a "Letter of Medical Necessity" on October 11, 2016, listing and explaining Plaintiff's ailments. (*Id.* at 21.) Plaintiff then requested review of the adverse benefit determination on October 25, 2016. (ECF No. 1-1 at 15.) The appeal was received by Anthem on November 5, 2016. (*Id.* at 14.) On November 16, 2016, Anthem upheld its adverse determination of Plaintiff's benefits. (*Id.* at 12.) The determination, in pertinent part, states as follows:

> We cannot approve you to have surgery by an out-of-network surgeon for breast reduction. Your insurance contract benefit language contains exclusive language which states that you must receive care from an in-network provider. The surgeon you saw you suggested surgery for you is not in this network, so no matter what the medical necessity of the surgery (which is not part of this determination), we cannot approve you to be treated by an out-of-network provider. This determination is based on your benefit language.

(*Id.*) On November 23, 2016, Plaintiff underwent breast reduction surgery. (*Id.* at 5.) The surgery was performed by Dr. Lynch. (*Id.*) Thereafter, Plaintiff requested external review of the appeal, which was received by Anthem on December 31, 2016. (*Id.* at 11.) Sherrell Jordan, Anthem's Grievances and Appeals Analyst, responded to the request on January 5, 2017, stating that "we have determined that the appeal does not qualify for external review because our coverage decision was not based on medical judgment or rescission of coverage." (*Id.*)

**II.    LEGAL STANDARD**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips*, 515 F.3d at

228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

### III. DECISION

As best the court can glean from a review of the Complaint and attachments, Plaintiff is attempting to bring a breach of contract claim against Anthem.[1] Plaintiff claims that a certain breast reduction surgery, despite being performed by an out of network provider, Dr. Lynch, was a medical necessity that should be reimbursed by Anthem. Defendants argue that Plaintiff's contract claim "is undeniably preempted by ERISA." (ECF No. 6-1 at 7.) Even if the Court does not find that ERISA preempted Plaintiff's claims, Defendants argue that "the state law claim for breach of contract would still fail as a matter of law because . . . the Complaint fails to plead the necessary elements of any such claim." (*Id.*)

While Defendant's motion to dismiss is unopposed by Plaintiff, the merits of Plaintiff's claim must still be assessed by this Court. *See Jones v. Unemployment Compensation Bd. of Review*, 381 F. App'x. 187, 189 (3d Cir. 2010) (citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("[A] Rule 12(b)(6) motion should not be granted without an analysis of the merits of the underlying complaint notwithstanding local rules regarding the granting of

---

[1] In her *pro se* application attached to her complaint, Plaintiff listed her action against Anthem as a "contract dispute." (*Id.* at 2, 3.) Plaintiff also checked the "Contract" box on her summons, further indicating that her action was for a breach of contract. (*Id.* at 6.)

unopposed motions"); *Xenos v. Hawbecker*, 441 F. App'x. 128, (3d Cir. 2011) (in finding that the District Court's dismissal of the claims of Xenos (a *pro se* litigant) as "unopposed" without any analysis under Federal Rule of Civil Procedure 12(b)(6) was unwarranted, stating that "unless a plaintiff's failure to oppose a motion can be truly understood to reflect that the motion is unopposed—for instance, when then plaintiff is represented by counsel—we have expressed a preference for an assessment of the complaint on the merits").

"Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 516 (2010) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)). The Supreme Court has "recognized that ERISA represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* (citations omitted). It has further recognized "Congress sought to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Id.* (citations omitted). ERISA "induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002).

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Supreme Court has interpreted "relate to" broadly, stating, "the phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *see Ingersoll–*

*Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (concluding that Congress had "expressly included a broadly worded preemption provision in a comprehensive statute such as ERISA," based on Congress's use of "the words 'relate to' Congress used those words in their broad sense, rejecting more limited preemption language that would have made the clause applicable only to state laws relating to the specific subjects covered by ERISA") (citations omitted).

"The Supreme Court has broadly interpreted the ERISA preemption clause, finding that a law 'relates to' a benefit plan 'if it has a connection with or reference to such a plan.'" *Estate of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 466 (D.N.J. 2015) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983)). "A state law cause of action 'relates to' an employee benefits plan if, without the plan, there would be no cause of action." *Id.*; *Our Lady of Lourdes Health Sys. v. MHI Hotels, Inc. Health & Welfare Fund*, 2009 WL 4510130, at *3 (D.N.J. Dec. 1, 2009) (holding that state law claims were preempted by ERISA because "the existence of the plan was essential to the suit and the courts would have been required to look to those plans to resolve the dispute"). "If a claim 'relates to' a benefit plan, the claim is completely preempted when (1) the plaintiff could have brought the action under § 502(a) of ERISA and (2) no independent legal duty supports the plaintiff's claim." *Khan v. Guardian Life Ins. Co. of Am.*, No. 16-253, 2016 WL 1574611, at *2 (D.N.J. Apr. 19, 2016) (citing *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). In other words, "where the plaintiff's claim rests on an independent legal duty, not arising from the ERISA Plan, the claim may be brought." *Grimes v. Prudential Fin., Inc.*, No. 09-419, 2010 WL 2667424, at *17 (D.N.J. June 29, 2010). A legal duty is "independent" if it "would exist whether or not an ERISA plan existed." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009).

In *Pryzbowski v. U.S. Healthcare Inc.*, 245 F.3d 266 (3d Cir. 2001), the Third Circuit created a framework for determining whether a case was "related to" an employee benefit plan and was therefore preempted under ERISA. In that case, the Third Circuit separated cases into two categories: "whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action." *Id.* at 273.

"State law claims relating to an employment plan are preempted by ERISA even if there is no corresponding federal remedy under the statute." *Estate of Jennings*, 126 F. Supp. 3d at 466-67. Courts have found that state law breach of contract, bad faith, negligence, intentional infliction of emotional distress, and the New Jersey Consumer Fraud Act claims are preempted by ERISA if the claims relate to an ERISA-governed benefits plan. *See Pilot Life Ins. Co.*, 481 U.S. at 54-57 (holding that state law tort of bad-faith claim denial was preempted under ERISA); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294-96 (3d Cir. 2014) (holding that ERISA expressly preempts claims for common law fraud, misrepresentation, and violation of the NJCFA); *Early v. United States Life Ins. Co.*, 222 F. Appx. 149, 151-52 (3d Cir. 2007) ("State law claims of bad faith and breach of contract . . . . ordinarily fall within the scope of ERISA preemption[ ] if such claims relate to an ERISA-governed benefits plan."); *Pryzbowski*, 245 F.3d at 278 (finding that claims against insurance companies for denial of benefits, "even when the claim is couched in terms of common law negligence or breach of contract," are preempted). In sum, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Here, Plaintiff's health plan with Anthem is an ERISA-governed health insurance plan and Plaintiff essentially alleges she was wrongfully denied benefits for a surgery she believed was necessary. (ECF No. 1-1 at 5.) Plaintiff's purported breach of contract claim[2] arises out of her contract with Anthem. (*See* ECF No. 1-1 at 5 ("Please . . . have Blue Cross Blue Shield pay for my expenses.")). In other words, Plaintiff's claim stems solely from Defendant's refusal to provide benefits for her breast reduction surgery by an out-of-network surgeon. Because the only contract at issue is Plaintiff's contract with Anthem, an ERISA-governed health insurance plan, Plaintiff's breach of contract claim is preempted. *See Lazorko v. Pa. Hosp.*, 237 F.3d 242, 250 (3d Cir. 2000) ("One example of complete preemption is a claim for denial of benefits under an ERISA plan."); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987) (finding that plaintiff's breach of contract claim, governed by state law, fell within the reach of Section 502(a), and was therefore preempted by ERISA); *Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, No 14-6175, 2015 WL 5770474, at *3 (D.N.J. Sept. 30, 2015) ("[B]reach of contract claims obviously look for recovery of insurance benefits under the insureds' health plan, and so they fall within the scope of 502(a)."). As a result, Defendant's Motion to Dismiss Plaintiff's breach of contract claim is **GRANTED.**

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED.** An appropriate order will follow.

/s/Brian R. Martinotti
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[2] While it is not readily apparent that Plaintiff can sufficiently state a cause of action for breach of contract, for purposes of determining ERISA preemption, the Court reads the Complaint in a light most favorable to her, treating her complaint as one for breach of contract. (ECF No. 1-1 at 2-3, 6.)